Nathaniel K. Charny (NC 5664)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel:  (845) 876-7500
Fax:  (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Jontus Walker

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONTUS WALKER,<br><br>                                  Plaintiff,<br><br>-vs-<br><br>CSL BEHRING and JOHN THIXTON in his professional and individual capacity,<br><br>                                  Defendants. | COMPLAINT<br><br>Case No. _____ |

Plaintiff Jontus Walker, by and through counsel, states these allegations against Defendants CSL Behring and John Thixton, based upon Plaintiff's personal knowledge and when stated based upon Plaintiff's information and belief.

INTRODUCTION

1. Plaintiff Jontus Walker, an African-American male, brings this action against Defendants for their race-discrimination against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964 and the New York State Executive Law and in retaliation for Plaintiff objecting to race-based discrimination in the workplace in violation of the same statutes.

1

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 insofar as this action arising under Acts of Congress regulating commerce.

3. This Court has supplemental jurisdiction over the state claims raised by virtue of 28 U.S.C. § 1367(a).

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) insofar as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5. Plaintiff Jontus Walker is an African-American male, and resident of Monroe County, New York.

6. Defendant CSL Behring (herein Defendant CSL) is a pharmaceutical company and collector of human plasma with headquarters located in King of Prussia, Pennsylvania.

7. Defendant John Thixton is and was for all relevant times the Associate Director of Operations and Quality for five of Defendant CSL's Centers, including the Greece Center. Defendant Thixton is a white male.

## FACTS

8. Plaintiff began employment with Defendants on January 27, 2020 as Center Manager for Defendant CSL's Greece Center.

9. At the time of his hire, the Greece Center was underperforming by all metrics.

10. Plaintiff's leadership turned the Greece Center from a liability to a success, in fact turning the Greece Center from deficit in all metrics to positive in all performance metrics.

11. For all of his employment with Defendants, Plaintiff was the only Black male member of Defendants' management team at the Greece facility.

12. From the beginning of his employment with Defendants and continuing until his summary discharge from employment, Plaintiff experienced race-based discriminatory treatment against himself and the few other non-white males who worked for the Defendant, including, for example:

(i) Providing personalized (name and logo) winter coats to selected management and staff, but refusing to provide personalized winter coats to any of the non-white male staff;

(ii) Only Black male staff, including Plaintiff as the only Black male manager, would be pulled out of meetings and instructed to perform janitorial duties such as mopping up spills;

(iii) With unusual and obviously intentional frequency, meetings that had Black men as participants were often disrupted and the Black male staff (and Plaintiff as the only Black male manager) would be instructed to leave the meeting to perform ministerial and/or demoralizing tasks;

(iv) Black male staff (and Plaintiff as the only Black male manager) were treated with open contempt and disrespect in the workplace by the white leadership; and

(v) The non-Black male leadership openly and apparently engaged in efforts to obstruct and sabotage the success of any of the non-white male staff.

13. Several non-white male staff complained to Plaintiff about what was obviously race-and-gender-based hostility in the workplace as against the Black male staff.

14. These same Black male staff complained to the Company's Regional Director as well as Corporate HR about race-based discrimination against Black male staff.

15. In or about July 2020 Plaintiff was questioned by the Company's Regional Director (a white women) about whether Plaintiff had experienced and/or believed there was race-based discrimination in the workplace against Black men. Plaintiff answered honestly and reported that in fact not only had he seen staff experience such discrimination but that he himself had been subject to race-based discrimination as a Black male.

16. The Regional Director in particular asked if Plaintiff agreed with the complaining janitor that Defendant Thixton was racist. Plaintiff answered, again honestly, that Defendant Thixton was engaging in blatantly racist behavior in the workplace at the Greece Center.

17. At that time, Plaintiff requested that the Company take steps to correct and remediate what Plaintiff experienced as blatant racism against Black men in the Defendants' workplace at the Greece Center.

18. Within in or about a week of that discussion Plaintiff began experiencing a palpably different treatment by Defendant Thixton, including increase alienation and being ostracized from management level meetings.

19. Defendant Thixton became increasingly non-responsive to Plaintiff and instead Defendant Thixton would communicate directly with one of Plaintiff's subordinates and give instructions only to this person (a white female).

20. Notwithstanding such palpable race-based hostility and retaliation by Defendant Thixton, Plaintiff was consistently throughout his entire employment with the Defendants the highest-rated management team member at the Greece Center in all performance metrics.

21. For example, during his tenure Plaintiff brought the Greece Center from three years of consistent underperformance to become in line with the Company standards, meeting all key performance objectives.

22. On or about early November 2020, Plaintiff came to know that his all-white supervisors were investigating payments being made to plasma donors who were also staff of the Defendants as well as donors, claiming same to be misappropriation of the Company's money. In particular, the Company was investigating discrepancies in the Greece Center's "manual payments."

23. Manual payments are payments that are put on a person's account that the system is not triggering automatically to a plasma donation. This stands in contrast to automatic payments which are the vast majority of payments and record keeping and which are generated from the actual volume of plasma donation.

24. The Defendants knew at all relevant times that because Plaintiff was Center Manager Plaintiff would routinely log in to various work stations in front of staff in order to facilitate efficient operation of the Center.

25. Plaintiff made no improper manual cash payments.

26. During the entire course of the alleged investigation into manual payments, Plaintiff repeatedly reminded management that Plaintiff's log in information was easily accessible because Plaintiff routinely logged in to various work stations throughout the work day.

27. During the course of the investigation certain staff, who are all White, conceded that they engaged in the use of Plaintiff's login to facilitate improper manual payments which were the same manual payments being investigated by the Defendants.

28. On or about December 4, 2020, Plaintiff, who had nothing to do with any unauthorized manual payments, was summarily discharged from employment with the Company.

29. Other managers (who are all White) who were directly implicated in the misconduct suffered no adverse employment action of any sort.

30. The only person who suffered adverse employment action was Plaintiff.

31. All of the non-staff donors who were questioned by Defendant Thixton, were questioned without a witness present in violation of Company policy.

32. One of the few Black male non-management staff members at the Greece Center was subject to particularly aggressive and hostile questioning by the all-white managers. After this person, one of the few non-white staff members, refused to provide the demanded inculpatory statements against Plaintiff, this person was put on the "deferred list," denying him to this date a previous source of income, to wit, payment for donating plasma.

33. An Hispanic staff member who was also a donor was questioned by Defendant Thixton without a witness present and this non-white male was put on the "deferred list."

34. During the course of the purported investigation into manual payments, at least two members (both white and female) admitted to making manual payments that were outside the scope of the Defendants' practices.

35. Neither of these white members of the management team saw adverse action taken against them and, indeed, one of them was never even interviewed, or questioned about making such out-of-scope payments.

36. The non-staff donor who received the largest amount of alleged improper manual payments identified one of these white women as the perpetrator of the payments and yet Defendant Thixton chose not to ever interview her or identify her as a target of the investigation.

37. During the scope of the purported investigation, Plaintiff advised and requested that a white female staff member at the Greece Center who was a recipient of the alleged improper manual payments be interviewed and asked that the Company discuss the matter with this staff person.

Defendants failed and refused to interview or even question this individual prior to terminating Plaintiff's employment.

38. At no time during the alleged investigation into the manual payments did Plaintiff have any HR representation to discuss the investigation, breadth of the allegations, or any advisement of the Company policy/practice that Plaintiff was accused of having violated.

39. During the course of the alleged investigation, only Black and Hispanic men were selected by the Defendants to be placed on the "deferral list," meaning these staff members where no longer allowed to receive manual payments.

40. Upon information and belief, there were white staff members who were directly implicated in the manual payments investigation, and none of them were put on the deferral list.

41. Only Black and Hispanic men were selected and remain on the deferral list as a result of the manual payments issue.

42. While Plaintiff authorized no improper manual payments, the fact is that during he course of the alleged investigation Defendant Thixton came to know that at least two other Centers routinely engage in the same or more egregious manual payments that form the basis of Defendant Thixton's decision to terminate Plaintiff's employment. Both of these Centers (Henrietta and Buffalo) have Center Managers who are white, one male and one female.

43. During the course of his purported investigation, Defendant Thixton knew about these practices and that they were historical and yet took no action nor ever even questioned these two white Center Managers about their historical practices regarding manual payments.

44. During the course of the purported investigation, Defendant Thixton came to know with certainty that the improper manual payments were being made by two white female supervisors -- the same two supervisors who Defendant Thixton was using to circumvent having to speak with Plaintiff.

45.     Defendant Thixton ignored this certain knowledge and took no adverse employment action against either of these two white women.

46.     Not only did Defendant Thixton ignore this certain knowledge, Defendant Thixton intentionally hid this information, instead ensuring that all focus of the investigation by Defendant Thixton was on Plaintiff and Plaintiff only.

47.     Plaintiff was selected for termination because of his race and because he had complained about race discrimination being perpetrated by Defendant Thixton.

48.     Plaintiff did not engage in any of the alleged misconduct regarding the manual payments.

49.     Instead, other managers and staff who were not Black had conceded to the misconduct yet they were not subject to any adverse employment action.

50.     At the meeting where Plaintiff was terminated by Defendant Thixton, where another senior level manager was present, Defendant Thixton conceded that he had not concluded that Plaintiff had engaged in the alleged misconduct and instead conceded that Plaintiff was being terminated simply because Plaintiff's login was used for the improper manual payment.

51.     As Plaintiff made clear throughout the alleged investigation, he had nothing to do with any improper manual payments.

52.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the EEOC) complaining of the discriminatory conduct set out in this complaint. By notice dated June 30, 2022, the EEOC sent Plaintiff a Notice of Right to Sue.

FIRST CAUSE OF ACTION
Discrimination -- 42 U.S.C. § 1981

53.     Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

54. By reason of the foregoing, the Defendants have unlawfully discriminated against Plaintiff in his terms, conditions and privileges of employment, in that Defendants created a hostile work environment, subjected him to an atmosphere of adverse acts, and treated him disparately, because of Plaintiffs race.

## SECOND CAUSE OF ACTION
Discrimination -- Title VII of the Civil Rights Act of 1964

55. Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

56. By reason of the foregoing, the Defendants have unlawfully discriminated against Plaintiff in his terms, conditions and privileges of employment, in that Defendants created a hostile work environment, subjected him to an atmosphere of adverse acts, and treated him disparately, because of Plaintiffs race., in violation of the Equal Protection Clause of the United States Constitution

## THIRD CAUSE OF ACTION
Discrimination -- New York State Executive Law

57. Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

58. By reason of the foregoing, the Defendants have unlawfully discriminated against Plaintiff in his terms, conditions and privileges of employment, in that Defendants created a hostile work environment, subjected him to an atmosphere of adverse acts, and treated him disparately, because of Plaintiffs race.

## FOURTH CAUSE OF ACTION
Retaliation -- 42 U.S.C. § 1983

59. Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

60. By reason of the foregoing, the Defendants have unlawfully retaliated against Plaintiff for engaging in protected activity, to wit, complaining of discrimination in the workplace, and as such, has treated Plaintiff disparately in violation of Plaintiff's Constitutional Rights to Equal Protection Under the Law.

## FIFTH CAUSE OF ACTION
Retaliation -- Title VII of the Civil Rights Act of 1964

61. Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

62. By reason of the foregoing, the Defendants have unlawfully retaliated against Plaintiff for engaging in protected activity, to wit, complaining of discrimination in the workplace and requesting the investigation of same.

## SIXTH CAUSE OF ACTION
Retaliation -- New York State Executive Law

63. Plaintiff restates the allegations previously set out as if set forth fully in this cause of action.

64. By reason of the foregoing, the Defendants have unlawfully retaliated against Plaintiff for engaging in protected activity, to wit, complaining of discrimination in the workplace and requesting the investigation of same.

## JURY DEMAND

65. Plaintiff demands a jury for adjudication of all claims in this suit.

## REQUEST FOR RELIEF

66. Plaintiff requests judgment against Defendants for all actual damages, compensatory damages including mental anguish and pain and suffering, actual physical injury arising out of the discriminatory conduct, and punitive damages.

67. Plaintiff requests pre- and post-judgment interest.

68. Plaintiff requests attorney's fees and costs.

69. Plaintiff requests such other relief as the Court deems just and proper.

Dated: Rhinebeck, New York
September 28, 2022

_____
Nathaniel K. Charny (NC 5664)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel:  (845) 876-7500
Fax:  (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Plaintiff Jontus Walker